**IN THE COURT OF APPEALS OF IOWA**

No. 24-1558
Filed April 23, 2025

**IN THE INTEREST OF L.H.,**
**Minor Child,**

**L.H., Father,**
    Petitioner-Appellee,

**M.U., Mother,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, David W. Brooks, Judge.

A mother appeals the private termination of her parental rights to her son. **AFFIRMED.**

McKinsea Alexander, Council Bluffs, for appellant.

J. Joseph Narmi, Council Bluffs, for appellee.

Maura C. Goaley, Council Bluffs, attorney and guardian ad litem for minor child.

Considered without oral argument by Greer, P.J., and Langholz and Sandy, JJ.

**LANGHOLZ, Judge.**

A father petitioned to terminate the parental rights of his son's biological mother after over three years of radio silence. Though a custodial order granted the mother supervised visitation with the son, she stopped seeing, calling, texting, emailing, or writing the son after the fall of 2021—not even on his birthday. And the mother's prolonged absence increasingly affected the son. So the district court terminated the mother's parental rights, finding she abandoned the son and termination is in his best interest.

The mother now appeals, arguing the father failed to prove the son is best served by termination. We disagree. At the time of the hearing, the mother was incarcerated on two felony charges in Illinois, with no release date on the horizon. What's more, the mother offered only vague justifications for her extended disinterest in the son before her incarceration. In the meantime, the son—now seven years old—has bonded with his stepmother and wishes for her to adopt him. The son desires, and is entitled to, stability and permanency with his father and stepmother. Thus, we find termination is in his best interest and affirm the termination of the mother's parental rights.

I.

In May 2017, the father and mother welcomed a son. At first, the father and mother raised him together, though they never married. When the son was about a year old, the couple broke up and the mother obtained a no-contact order against the father. During the year when the no-contact order was in place, the mother largely raised the son herself. But in 2019, the mother experienced a downturn in her mental health and the mother's sister was appointed to be the son's guardian.

The father was unaware of the guardianship proceedings and promptly moved for a custodial order after discovering the guardianship.

In 2020—when the son was three years old—a custodial order placed the son in the father's physical care and granted the mother supervised visitation. And the mother was ordered to pay child support. About a year later, the father moved to modify that order, alleging the mother was flouting the supervision requirements and often spending time alone with the son. As a result, the father was granted sole legal custody and the mother's visitation was suspended until she contacted a visitation agency to arrange for supervised visitation at public places.

After the 2021 modification order, the mother stopped having any contact with the son. She never reached out to the father over email or phone to arrange a visit or speak with the son. She never sent the son any letters or cards, even on his birthday. And she never paid any child support. In March 2024, the mother was charged in Illinois with home invasion and residential burglary, both felony offenses. *See* 720 Ill. Comp. Stat. 5/19-6, 5/19-3 (2024). She was incarcerated while awaiting trial and had no tentative release date at the time of the termination hearing. Although the mother communicated with her other children while incarcerated, she concedes she has never called the son or written to him.

In May 2024, the father petitioned to terminate the mother's parental rights to the son under Iowa Code chapter 600A (2024). The court appointed a guardian ad litem for the son, who recommended termination. After a one-day trial, where the father and mother both testified, the court found the mother abandoned the son under Iowa Code section 600A.8(3)(b) and that termination was in the son's best interest. And so the court terminated the mother's parental rights. She appeals.

II.

Private actions to terminate parental rights follow a two-step process. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). First, a petitioner must show "clear and convincing" evidence that one or more grounds for termination exist. Iowa Code § 600A.8. Second, the petitioner must prove that termination is in the child's best interest. *Id.* § 600A.1. We review these issues de novo, giving due weight to the district court's preferred fact-finding position. *B.H.A.*, 938 N.W.2d at 232.

The mother only challenges the second step—disputing whether the father proved that terminating her parental rights is in the son's best interest. Under our private-termination framework, the son's best interest "requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent." Iowa Code § 600A.1(2). When deciding whether a parent has not assumed those duties, we consider "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.* So too may we consider the best-interest framework within Iowa Code chapter 232, *B.H.A.*, 938 N.W.2d at 232, which prioritizes the son's safety, long-term growth, and overall needs, *see* Iowa Code § 232.116(2).

On appeal, the mother acknowledges her prolonged absence from the son's life. Still, she argues she has endured mental-health and financial setbacks, will obtain reliable housing upon release, and shares a close bond with the son that should not be severed. But putting the son's wellbeing at the forefront, we agree that terminating her rights is in his best interest.

The son—now seven years old—is aware of his mother's neglect and told the guardian ad litem he wishes his stepmother was his "real mom." Indeed, the father testified that questions from his son about why his stepmother "can't be [his] mom" spurred him into filing this termination action. The mother offers only vague explanations for why she expressed no interest in the son and never contacted him for over three years, despite the son being increasingly affected by her absence. And she points to similarly vague explanations of financial instability to justify never providing any financial support to the son over the years.

Though we do not doubt the mother is sincere in her desire to improve after her eventual release, we will not delay the son's right to security and permanency "by hoping someday a parent will learn to be a parent and be able to provide a stable home for" him. *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Without any certainty over when the mother will be released or what kind of support she could provide after release, declining termination would leave the son to languish indefinitely. Because the son desires, and is entitled to, stability with his father and stepmother, we agree with the district court that he is best served by terminating the mother's parental rights.

**AFFIRMED.**